USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/24/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
JANA ROMANOVA,  :
:
                      Plaintiff, :    22-CV-8948 (VEC)
:
        -against- :    OPINION AND ORDER
:
AMILUS INC., :
:
                    Defendant. :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiff Jana Romanova ("Plaintiff") sued Amilus Inc. ("Defendant") for willful copyright infringement under Section 501 of the Copyright Act, 17 U.S.C. § 501. Compl. ¶¶ 46–54, Dkt. 1. After Defendant failed to appear, Plaintiff moved for default judgment. *See* Dkts. 17–20. After a show-cause hearing, the Court ordered Plaintiff to show cause why this case should not be dismissed under the fair use exception of the Copyright Act, 17 U.S.C. § 107. *See* Dkt. 28. As detailed below, because Plaintiff has failed to show why Defendant's use of Plaintiff's photograph is not protected by the fair use exception, the case is DISMISSED.

1

## BACKGROUND[1]

Plaintiff is a professional photographer. Compl. ¶ 5.[2] Defendant is the registered owner of the website www.ap-ai.com (the "Website"), which "sells merchandise to the public." *Id.* ¶¶ 3, 6, 18–20. Plaintiff owns the copyright to a photograph of a woman with a snake wrapped around her left wrist and another snake wrapped around a portion of her torso and arm (the "Photo"). *Id.* ¶¶ 21–23; *id.*, Ex. 1 (Dkt. 1-1). Plaintiff alleges that Defendant infringed her copyright by posting the Photo to the Website. Compl. ¶¶ 24–28; *id.*, Ex. 2 (Dkt. 1-2).

Plaintiff alleges that she registered the Photo with the United States Copyright Office (the "USCO") on October 3, 2017, under Registration No. VA 2-071-921. Compl. ¶ 23. Plaintiff claims that she originally licensed the Photo for use in a National Geographic article about persons in Russia who owned snakes as household pets. *See* Pl. Decl. ¶ 12, Dkt. 31. "At its heart, the Photograph is a display of snakes as domesticated pets with their owner in Russia." Pl. Mem. at 5, Dkt. 30. On December 26, 2019, Plaintiff alleges that she observed the Photo in an

---

[1] The facts are based on the allegations contained in the Complaint, materials attached to the Complaint, and Plaintiff's filings in response to the Court's order to show cause (Dkts. 30–31). In light of Defendant's default, *see* Dkt. 12, Plaintiff's properly pleaded allegations, except those relating to damages, are accepted as true. *See Goga v. Zim Am. Integrated Shipping Servs. Co.*, 2009 WL 320602, *1 (S.D.N.Y. Feb. 10, 2009) (citing *Cotton v. Slone,* 4 F.3d 176, 181 (2d Cir. 1993)). The Court considers Plaintiff's descriptions and exhibits purporting to demonstrate Defendant's alleged infringing use of the Photo *in toto*; the Complaint references Defendant's use repeatedly, provides screenshots from it, and it is critical to Plaintiff's Complaint. *See* Compl. ¶¶ 24–26, 30, 50; *id.*, Ex. 2 (Dkt. 1-2); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) ("[A complaint] is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. . . . Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (quotations omitted)).

[2] The Court notes that the Complaint alleges that Plaintiff is a citizen of The Netherlands, Compl. ¶ 5, but in the Declaration in Support of Plaintiff's Response to the Court's Order to Show Cause, Plaintiff claims to be a citizen of Russia, *see* Pl. Decl. ¶ 1, Dkt. 31.

article on the Website titled "Trending: Dogs, Cats . . . and Other Pets, to Start Off 2018" (the "Article").  Compl. ¶¶ 24–25.[3]

On October 20, 2022, Plaintiff filed the Complaint.  Dkt. 1.  After Defendant failed to appear or otherwise respond to the Complaint, Plaintiff initiated default judgment proceedings.  *See* Dkt. 23.  On January 27, 2023, this Court held a show cause hearing on Plaintiff's motion; Defendant did not appear.  *See id.*; Order, Dkt. 28.  Following the hearing, the Court ordered Plaintiff to show cause why Defendant's alleged infringing use of the Photograph fell outside the fair-use exception.  *See* Order, Dkt. 28.[4]  On February 13, 2023, Plaintiff filed a memorandum of law and a declaration in response to the Court's order.  Dkts. 30–31 ("Pl. Mem." and "Pl. Decl.", respectively).

**DISCUSSION**

A Clerk's entry of default against a defendant for failure to appear does not automatically entitle Plaintiff to default judgment.  *See Goga v. Zim Am. Integrated Shipping Servs. Co.*, 2009 WL 320602, *2 (S.D.N.Y. Feb. 10, 2009) (quotation omitted).  Before granting default judgment, the Court must be satisfied that the Complaint states a claim upon which relief can be granted.  *McGlynn v. Cools, Inc.*, 2020 WL 6561658, at *5 (S.D.N.Y. July 1, 2020) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)), *report and recommendation adopted*, 2020 WL 5525745 (S.D.N.Y. Sept. 15, 2020).  Accordingly, taking Plaintiff's well-pleaded allegations as true, except those relating to damages, and Plaintiff's additional uncontroverted factual proffers in support of her motion as true, Plaintiff still must state a claim

---

[3]  Plaintiff alleges that the infringing use can be found at the URL https://www.aiap.com/publications/article/22624/trending-dogs-cats-and-other-pets-to-start.html.  Compl. ¶ 25.

[4]  Plaintiff's counsel was also asked to provide supporting documentation for Plaintiff's licensing use of the Photo in the event that the Court were to find Plaintiff entitled to any damages.  *See* Order, Dkt. 28.

3

for relief.  *See* Fed. R. Civ. P. 55(b); Fed. R. Civ. P. 8(b)(6); *Yahoo! Inc. v. XYZ Cos.*, 872 F. Supp. 2d 300, 303 (S.D.N.Y. 2011).

Section 106 of the Copyright Act grants copyright holders certain exclusive rights over their original works, including the right "to reproduce the copyrighted work in copies or phonorecords" and the right "to display the copyrighted work publicly."  17 U.S.C. § 106.  The fair use doctrine is a statutory exception to copyright infringement.  *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006).  The doctrine "allows for new transformative works that further the public discourse and the free exchange of ideas in order to promote science and the arts."  *Baraban v. Time Warner, Inc.*, 2000 WL 358375, at *2 (S.D.N.Y. Apr. 6, 2000).  As codified in the Copyright Act, "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . ., scholarship, or research, is not an infringement of copyright."  17 U.S.C. § 107.

Although courts generally wait until summary judgement to address fair use, *Graham v. Prince*, 265 F. Supp. 3d 366, 377 (S.D.N.Y. 2017), dismissal of a copyright infringement claim is warranted where fair use is clearly established on the face of the complaint, *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016).

### I.      Standard of Review

To survive dismissal, "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level."  *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014).  The Court accepts all factual allegations in the complaint as true and draws all

reasonable inferences in the light most favorable to the plaintiff. *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013). The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The Court may also consider "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Prince*, 265 F. Supp. 3d at 376 (quotation omitted); *see also supra* note 1. Assuming without deciding that Plaintiff possesses the copyright and that Defendant's use of the Photo was unauthorized, if Defendant's use falls within the fair use doctrine, then Plaintiff has failed to state a claim.

## II. Fair Use Analysis

Fair use is a "mixed question of fact and law," necessitating "an open-ended and context-sensitive inquiry." *Prince*, 265 F. Supp. 3d at 376 (quotation omitted). To determine whether a particular use is fair use, courts engage in a case-by-case evaluation using four statutory factors in light of the purposes of copyright. *Bill Graham Archives*, 448 F.3d at 608. The factors to be considered include —

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

### A. Purpose and Character

The heart of the fair use inquiry is the purpose and character of the use. *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006). It includes two considerations: whether the use is transformative, *see Bill Graham Archives*, 448 F.3d at 608; and whether the "use is of a commercial nature or is for nonprofit educational purposes," 17 U.S.C. § 107(1). "The more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). Although a court must weigh all of the factors, a use's "transformativeness" is most important and "has a significant impact on the remainder of the fair use inquiry." *Prince*, 265 F. Supp. 3d at 380.

### 1. Transformative

To determine whether the secondary use is transformative, the "question is whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Bill Graham Archives*, 448 F.3d at 608 (quotation omitted); *see Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015) ("[A] transformative use is one that communicates something new and different from the original or expands its utility, thus serving copyright's overall objective of contributing to public knowledge."). A secondary use "can be transformative in function or purpose [even] without altering or actually adding to the original work." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014) (quotation omitted).

Courts have determined whether a work is transformative at this stage of litigation by making a side-by-side comparison of the original work and the allegedly infringing use. *See,*

*e.g.*, *Swatch Grp.*, 756 F.3d at 86 (affirming the district court's pre-discovery fair use ruling, noting that the "discovery [plaintiff] seeks would not alter our analysis"); *Lombardo v. Dr. Seuss Enters.*, 279 F. Supp. 3d 497, 505 (S.D.N.Y. 2017), *aff'd*, 729 F. App'x 131 (2d Cir. 2018) ("[A]lthough discovery might yield additional information . . . , such information is unnecessary to resolve the fair use issue; all that is needed is the parties' pleadings, copies of *Grinch* and the Play, and the relevant case law.")

Plaintiff attached as Exhibit 1 to her declaration a PDF printout of the authorized publication of the Photo. *See* Pl. Decl., Ex. 1. According to Plaintiff, the Photo depicts Elizaveta Lavrienko "with a corn snake intertwined on [her] front torso and a ball python wrapped around her left hand." Pl. Decl. ¶ 9. Plaintiff claims that she authorized National Geographic to use the Photo in an article titled "Intimate Photos of People and Their Beloved Pet Snakes." *Id.* ¶ 12. Plaintiff's Photo "was intended to showcase persons in [Plaintiff's] home country of Russia that kept snakes as pets, specifically to capture pet snakes in common environments that are more associated with mainstream domesticated animals." *Id.* ¶ 14. The National Geographic article did more than just feature the Photo; Plaintiff and her photographs of Ms. Lavrienko appeared to form the entire subject of the article; Plaintiff was quoted in the article discussing the genesis of her interest in photographing animals that are not typically kept as pets. *See id.*; Pl. Decl., Ex. 1.

Plaintiff attached as Exhibit 2 the alleged infringing use of the Photo by Defendant. *See* Pl. Decl., Ex. 2. The Article, titled "Trending: Dogs, Cats . . . and Other Pets to Start Off 2018," concerns "the ever-increasing amount of pet photography" circulating online. *See id.* The Article aggregates a collection of ten photographs, including: a grassy field full of dogs in motion at a purported no-kill dog shelter in Costa Rica; an elderly man lovingly head-butting his orange tabby; and three felines photoshopped by a graphic designer to recreate famous album

7

covers. *See id.* Ninth on the list is Plaintiff's copyrighted photo of a woman standing comfortably erect within the grip of her pet snakes. *See id.*

Plaintiff argues that the Article is not transformative because it used Plaintiff's photo as an illustrative device, *see* Pl. Mem. at 4 (collecting cases), and did not "communicate[] something new and different from the original or expand[] its utility," *id.* at 5–6 (quoting *Hunley v. BuzzFeed, Inc.*, 2021 WL 4482101, *3 (S.D.N.Y. Sept. 30, 2021)). But the instant case is distinguishable from the cases on which Plaintiff relies. For example, the court in *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594 (S.D.N.Y. 2020), in a partial denial of the defendant's motion to dismiss, found that the defendant failed to prove fair use of a photograph that the plaintiff had posted on Instagram and that defendant used, without permission, in an article to illustrate the same phenomena that was the essence of the Instagram post — the pooling of water to form an ephemeral lake in Death Valley. *See id.* at 606. Here, by contrast, the Article focuses on the overall trend of pet photography online, not the trend of humans adopting snakes as domestic pets. *See* Pl. Decl., Ex. 2. In that way, Defendant's use "communicates something new and different from the original or expands its utility." *Hunley*, 2021 WL 4482101, at *3. After comparing the Photo with Defendant's use on the Website, the Court finds that Defendant's use was transformative.

### 2. Commercial Nature

In evaluating the purpose and character of the use, the Court must also consider "whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). "The commercial/nonprofit dichotomy concerns the unfairness that arises when a secondary user makes unauthorized use of copyrighted material to capture significant revenues as a direct consequence of copying the original work." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913,

8

922 (2d Cir. 1994). But "because 'nearly all' fair uses of copyrighted works are conducted for profit, the Second Circuit has cautioned that 'the more transformative the new work, the less will be the significance' of the commercial sub-factor." *Prince*, 265 F. Supp. 3d at 382 (alteration omitted) (quoting *Cariou v. Prince*, 714 F.3d 694, 708 (2d Cir. 2013)).

Plaintiff argues that Defendant's use is commercial because Defendant's Website is behind a paywall (a monthly membership costs $4.95, *see* https://www.ai-ap.com/join), and because Defendant allegedly uses the Website as "a vehicle for [Defendant's] commercial activities, including its sponsored competitions and events," Pl. Mem. at 7. As Plaintiff correctly points out, however, "the relevant issue is not Defendant's business model or means of generating income, but whether the use at issue is commercial in nature." *Id.* (quotation omitted). Although the Photo cannot be viewed on Defendant's Website without a paid membership, thus weighing against a finding of fair use, this factor is not dispositive; the Court places even less significance on this factor considering the transformative nature of the secondary use and the other factors discussed below.

### 3. Bad Faith

Although courts should consider bad faith under the first fair use factor, *see Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 537 (S.D.N.Y. 2018), it generally "contributes little to the fair use analysis," *NXIVM Corp. v. Ross Institute*, 364 F.3d 471, 479 n.2 (2d Cir. 2004). Here, Plaintiff concedes the absence of bad faith — Defendant properly attributed the Photo to Plaintiff and shared the link to the original publication in National Geographic. *See* Pl. Decl.,

Ex. 2; Pl. Mem. at 7–8.[5]  Accordingly, although of little value, the absence of bad faith weighs in favor of fair use.

### B. Nature of the Copyrighted Work

The second fair use factor considers "(1) whether the work is expressive or creative, . . . with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower."  *Cariou*, 714 F.3d at 709–10 (quotation omitted).

The Photo is indisputably creative and published.  *See Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996) ("[P]hotographic images of actual people, places and events may be as creative and deserving of protection as purely fanciful creations.").  The creative nature of the Photo might have weighed slightly against fair use but for the transformative nature of Defendant's use, which altered the meaning of the Photo by using it as one of several examples demonstrating an overall trend in online pet photography.  *See Blanch*, 467 F.3d at 257 ("[T]he second factor may be of limited usefulness where the creative work of art is being used for a transformative purpose." (quotation omitted)); *see also Authors Guild*, 804 F.3d at 220 ("The second factor has rarely played a significant role in the determination of a fair use dispute.").  The second fair use factor weighs minimally, if at all, against a finding of fair use.

---

[5]   It is conceivable that Defendant's description of the Photo and the National Geographic article that featured the Photo, and the Article's explicit attribution to Plaintiff (which also linked to what appears to be her professional website), generated an increase in traffic to the original National Geographic article displaying the full array of Plaintiff's photographs and her commentary on the subject of pet snakes.  The Court would be hard-pressed to find bad faith under these circumstances.

### C. Amount and Substantiality of the Portion Used

The third fair use factor asks whether "the quantity and value of the materials used[] . . . are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586 (quotation omitted). Although the Second Circuit has never "ruled that the copying of an entire work *favors* fair use*,*" "such copying does not necessarily weigh against fair use because copying the entirety of a work is sometimes necessary to make a fair use of the image." *Bill Graham Archives*, 448 F.3d at 613. Thus, "the third-factor inquiry must take into account that 'the extent of permissible copying varies with the purpose and character of the use.'" *Id.* (quoting *Campbell*, 510 U.S. at 586–87).

While the Photo is displayed in its entirely, such use is reasonable in light of the purpose and character of the use: to demonstrate the prevalence and increasing popularity of online pet photography. Defendant appears to have used the Photo to provide visual context for the claim that the consumption of pet photography would continue its upward trajectory in 2018. *See* Pl. Decl., Ex. 2. To achieve this purpose, it was reasonable for Defendant to include a full visual of the Photo — which is one of several that Plaintiff authorized for publication in the National Geographic article and is one of ten photographs of pets that Defendant featured in the Article. *See* Pl. Decl., Ex. 1, 2. The utility of Defendant's secondary use is even more reasonable considering that the title of the Article explicitly references pet photography found online. *Cf. Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 821 (9th Cir. 2003) ("If Arriba only copied part of the image, it would be more difficult to identify it, thereby reducing the usefulness of the visual search engine.").

In this case, the secondary use was limited and focused on the Photo's embodiment of the Article's claim about human interest in viewing photographs of pets; the third factor is, therefore, neutral.

### D. Effect of the Use upon the Market for or Value of the Original

The final fair use factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This analysis is concerned with "whether the secondary use *usurps* the market of the original work." *Blanch*, 467 F.3d at 258 (emphasis added) (quotation omitted). It "focuses on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Authors Guild*, 804 F.3d at 223. As with the other factors, "this factor is also influenced by the resolution of the transformativeness inquiry" because "the more transformative the secondary use, the less likelihood that the secondary use substitutes for the original." *Prince*, 265 F. Supp. 3d at 384 (quotation omitted).

The Second Circuit has made clear that a "transformative market" does not qualify as a "traditional market." *See Bill Graham Archives*, 448 F.3d at 615 (holding that because the defendant's use of the copyrighted images as historical artifacts "falls within a transformative market, [the plaintiff] does not suffer market harm due to the loss of license fees"). And with respect to the "traditional market," a court must "look at the impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets," not, simply, that the defendant failed to pay a licensing fee. *Id.* at 614 (quotation omitted).

After conceding that Defendant's use of the Photo was "aggregated with additional images," Plaintiff argues that "Defendant's publication, a media outlet with a focus on visual and

12

illustrative art is a traditional market in which Defendant's secondary use arguably deprived Plaintiff by providing a competing substitute for the original." Pl. Mem. at 10. But Plaintiff "cannot prevent others from entering fair use markets merely by developing or licensing a market for . . . transformative uses of [his] own creative work." *Bill Graham Archives*, 448 F.3d at 615 (quotation omitted). A traditional market for the Photo might be snake enthusiasts or perhaps collectors of photographs of snakes or other exotic animals that have made their way into people's homes. But Defendant's use of the Photo as one of several that exemplifies the prevalence of pet photography as an artform falls into a different, transformative market. It is thus unlikely that markets for the Photo's original expressive purpose — "to catch the viewer off-guard" through Plaintiff's "own experience of phobia" of snakes, Pl. Decl., Ex. 1 at 3 — would be affected in any way. In any event, Plaintiff has offered only conclusory and speculative assertions that Defendant's use has caused "a meaningful or significant effect upon the potential market for the copyrighted work." *Authors Guild*, 804 F.3d at 224 (quotation omitted); *see* Pl. Mem. 10.

Accordingly, the fourth fair use factor weighs in favor of a finding of fair use.

**III.    Balance of Factors**

The Court finds that the balance of the fair use factors favors the Defendant's use. The first and most important factor weighs heavily towards a finding of fair use and significantly colors the other three factors. Defendant's use of the Photo to represent a trend in photographic images of pets is transformatively different from the original expressive purpose of the Photo. The second factor, which might otherwise favor Plaintiff, therefore, has limited weight. Similarly, although Plaintiff's Photo was copied in its entirety, the third factor does not weigh against fair use because the amount of the Photo used was reasonable in light of the

transformative purpose to which the Photo was put. Finally, Plaintiff's appeal to lost licensing revenue in the "visual and illustrative art" market holds no sway and, in fact, favors a fair use finding.

## CONCLUSION

For the foregoing reasons, the Court concludes that the Defendant's use of Plaintiff's copyrighted Photo is fair use. Accordingly, Plaintiff's Complaint is DISMISSED with prejudice. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

**Date: April 24, 2023**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**